**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| LAUREN COMBS,<br>on behalf of Plaintiff and a class,<br><br>       Plaintiff,<br><br>   vs.<br><br>LDF HOLDINGS, LLC,<br>MIDAASWI, LLC, and<br>JESSI LEE PHILLIPS LORENZO,<br>also known as Jessi Phillips Lorenzo,<br>formerly known as  Jessi Lee Phillips,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT  – CLASS ACTION

1.	Plaintiff Lauren Combs brings this action to secure redress from predatory and unlawful loans (such as Exhibit A, Ms. Combs' loan agreement).

2.	Plaintiff seeks a declaratory judgment that the loans are void and  an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III), and treble damages under RICO (Counts IV-VII).

## JURISDICTION AND VENUE

3.	This Court has subject matter jurisdiction under 18 U.S.C.  §1964 (RICO), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1367 (supplemental jurisdiction).  Depending on the number of class members and the amount of loans made to them, the Court may also have jurisdiction under 28 U.S.C. §1332(d).

4.	This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5.  Venue is proper because the loans were made to a resident of Winnebago County.

## PARTIES

### Plaintiff

6.  Plaintiff Lauren Combs is a resident of Pecatonica, Winnebago County, Illinois.

### Defendant LDF Holdings

7.  Defendant LDF Holdings, LLC ("LDF Holdings") is a limited liability company chartered under Wisconsin law.  (Exhibit B) Its registered agent and office is Elise Susnik, 3471 County Rd. NN, West Bend, WI 53095.  It claims to be wholly owned, indirectly, by the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "LDF Tribe").  (Material from LDF Holdings website, Exhibit C)

8.  LDF Holdings, LLC claims to operate from the second floor of a cigarette store called the Smoke Shop, located at 597 Peace Pipe Road, Lac du Flambeau, WI 54538. (Image in Exhibit D)

### Defendant Lorenzo

9.  The president of LDF Holdings, LLC is Jessi Lee Phillips Lorenzo, also known as Jessi Phillips Lorenzo, f/k/a Jessi Lee Phillips ("Lorenzo").

10.  According to her LinkedIn profile (Exhibit E), as well as information posted on LDF Holdings' website (Exhibit C, p. 4), Lorenzo is the president of LDF Holdings, LLC despite not being a member of the LDF Tribe.

11.  As president, Lorenzo directs and controls the lending activities, policies and practices  of LDF Holdings, LLC and Midaaswi, LLC.

12.  On information and belief, Lorenzo resides at 708 1st St.,  Apt. D, Indian Rocks Beach, FL 33785-2693, and formerly resided at 502 S. Fremont Ave., Apt. 1107, Tampa, FL 33606.

**Defendant Midaaswi, LLC**

13.     Defendant Midaaswi, LLC, doing business as National Small Loan ("Midaaswi"), is a limited liability company that conducts online lending at high interest rates, in excess of 500%. It does business via its website, www.nationalsmlloan.com.

14.     Midaaswi is allegedly reachable at PO Box 632, Lac Du Flambeau, WI 54538.

15.     Midaaswi claims to be wholly owned, indirectly, by the LDF Tribe. (Exhibit A)

16.     Midaaswi is allegedly a portfolio company of LDF Holdings, LLC (Exhibit C, p. 3).

17.     In fact, as described below, the principal economic benefit of the activities of Midaaswi is received by non-Native American persons, including Lorenzo.

18.     Midaaswi does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

19.     Lorenzo acts as the agent of or service provider to Midaaswi d/b/a National Small Loan, with the knowledge, consent and direct participation of LDF Holdings. For example, she is in charge of obtaining credit reports when needed for Midaaswi borrowers. She is effectively in charge of its operations.

## FACTS

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

20.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 et seq. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

21.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

22.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest.  815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

23.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable.  205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.");  815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

24.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

25.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony.  720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq).  It applies to a person who "while either within or outside the State, by his own conduct or that

-4-

of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State". 720 ILCS 5/1-5.

26.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC*, 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.*, 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

27.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC*, No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133   (https://www.idfpr.com/dfi/CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20Desist%20Order%20Bob%208%2016%202017.pdf)

## RENT-A-TRIBE SCHEMES

28.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly

referred to as a "rent-a-tribe" scheme.

29.     In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

30.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

31.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

32.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

33.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

34.     These so-called "tribal lenders" usually do not survive scrutiny when examined

-6-

closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

35.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

36.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* No. 18-2282,  787 F. App'x 81  (3d Cir. Sept. 6, 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

37.     Attempting to circumvent state interest rate caps by fraudulently asserting tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et al.,* No. 1:16-cr-91-PKC, 2017 U.S. Dist. LEXIS 134265 (S.D.N.Y. Mar. 1, 2017).

### NATIONAL SMALL LOAN'S
### EVOLUTION INTO A PURPORTED TRIBAL ENTITY

38.      Around November 18, 2013, the website nationalsmallloan.com was registered; archived Domain Name Registration records show it was registered to Melissa Drotar, 7257 NW 4th Blvd. #7, Gainesville, FL 32607, email melissa@nationalpayday.com. (Website, Exhibit F, and domain registration, Exhibit G)

39.     Nationalpayday.com was supposedly owned by Devidia II Ltd., which claimed to be located in Costa Rica. "Devidia II" appears to be named after the fictional planet Devidia II, referenced in Star Trek: The Next Generation.

40.     In reality, the business was beneficially owned by Aaron Taravella ("Taravella"), Oscar Rodriguez ("Rodriguez"), Jesus Diaz ("Diaz"), and other, non-Costa Rican investors.

41.     The address 7257 NW 4th Blvd.., #7, Gainesville, FL 32607 belongs to Westside Postal Express, a company that provides private post office boxes.

42.     National Pay Day operated out of an office at 4911 SW 91st Terrace, Suite A, Gainesville, FL 32608.  This is the same address used by Taravella for his business, Strategic Funding Partners, Inc. (Exhibit H)  At one point, Strategic Funding Partners, Inc., did business as "Gainesville Title Loan."

43.     National Small Loan made payday loans from its website at rates exceeding 700% annually. Archived web pages from January 2015 (Exhibit I) show no indication that the website, at that time, claimed any kind of affiliation with a Native American tribe. In January 2015, National Small Loan's logo featured a blue-and-black stack of cash to the left, with the word "National" on one line and "SmallLoan.com" on a second.

44.     Web archives from 2015 show its business hours to be listed as 9am to 5pm Eastern Standard Time. (Exhibit I)  Gainesville, Florida, is in the Eastern Time Zone.

45.     Web archives from 2015 show the main customer service number for NationalSmallLoan.com was 877-778-8006 and its fax number was 866-513-0374. (Exhibit I)

46.      The identical phone and fax numbers can be found on the website of Nationalpayday.com (Exhibit J)

47.     In June 2015, the State of Washington, Department of Financial Institutions, Division of Consumer Services, fined Devidia II Ltd. $4,750 for making illegal, unlicensed loans in Washington State, and ordered it to cease and desist.

-8-

48.     Shortly thereafter, National Small Loan began claiming it was owned by the LDF Tribe in rural Wisconsin, and that it was operated from the second floor of a cigarette store called the Smoke Shop in Lac du Flambeau, Wisconsin.

49.     The LDF Tribe is a small, isolated, and economically depressed Indian Tribe located in rural Wisconsin.

### ORIGIN OF THE LDF TRIBE'S PAYDAY LENDING OPERATIONS

50.     An article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013 noted that the tribe had embarked on a new internet lending business. The article stated that "some view payday loan and internet lending businesses as predatory, with companies taking advantage of individuals already in unpleasant financial situations." The article also stated that "the Tribe has partnered with one of the largest and most experienced lending companies." (Exhibit K)

51.     Lacking both capital and experience, and in desperate need of money, the tribe attempted to rent out one of its few remaining assets – its sovereign immunity – to non-tribal persons and entities who agreed to pay the LDF Tribe a small percentage of each loan as a fee or commission.

52.     Within a short period of time, the LDF Tribe became one of the most prolific suppliers in the rental market for sovereign immunity, making "rent-a-tribe" agreements with over 50 different non-tribal investors.

53.     The LDF Tribe received between one and three percent of revenues from each of these lenders in exchange for the use of their name. Despite supposedly owning a multitude of payday loan websites, transacting tens of millions of dollars in total revenues per month, a feat which would require thousands of employees, each and every payday lending website purportedly owned by the LDF Tribe states its business office operated

from the same small structure located at 597 Peace Pipe Rd., Lac Du Flambeau, WI 54538. (Exhibit D)

54. After its "acquisition" by the LDF Tribe, money flowed in – and out – of National Small Loan through a maze of different shell companies, including Unified Analytics, LLC ("Unified Analytics"), and National Techmark, Inc. ("National Techmark"). Both of these companies operated from 4911 SW 91st Terrace, Suite A, in Gainesville and were owned by Taravella's long-time associates, Rodriguez and Diaz.

55. Unified Analytics and National Techmark received more than $5 million from Ganador Enterprises, LLC, and Carl Ruderman ("Ruderman"). Unified Analytics and National Techmark used the money to fund "tribal" payday loans. Ruderman, through 1 Global Capital, LLC ("1 Global Capital"), raised millions of dollars from thousands of individual investors using a network of unlicensed and barred brokers, telling investors the money would be invested "safely" and used to make merchant cash advances.

56. Ruderman, 1 Global Capital, Unified Analytics, and National Techmark were sued in 2018 by the Securities and Exchange Commission for fraud. 1 Global Capital's chief financial officer, Alan Heide, was sentenced to a five-year prison term in 2019 for his role in the fraud.

57. Even though National Small Loan now claims to be located in Wisconsin, which is in the Central Time Zone, its website indicates hours of operation in Eastern Standard Time. Its logo also remains the same.

58. The fax number 866-513-0374 is still used by both the "tribal" National Small Loan (Exhibit A, second to last page) and non-tribal National PayDay as of August 2020

(Exhibit L)

59.     National Small Loan now purports to be owned by Midaaswi, LLC.

60.     Loan underwriting followed the same patterns as before. Loan approval was made by the non-tribal owners of National Small Loan, under the direction of Lorenzo. Electronic documents were transmitted to a Midaaswi/LDF Holdings representative on LDF tribal soil in Wisconsin, who rubber-stamped approval for the loan while technically on the LDF Tribe's reservation. The loans are then funded from bank accounts to which Midaaswi/LDF Holdings have no access, and the loans are serviced and collected by nontribal entities off the LDF Tribe's reservation, again under the direction of Lorenzo.

61.     However, LDF Holdings and Midaaswi were compensated by the beneficial, non-tribal owners of National Small Loan for their complicity.

## FACTS RELATING TO PLAINTIFF

62.     On or about May 7, 2021, Defendants made a loan to Plaintiff via Internet in the amount of $500 at a disclosed annual percentage rate of 704.63% (Exhibit A).

63.     The loan document is a form document.

64.     Defendants regularly make loans to individuals in Illinois at such rates.

65.     The loan was obtained for personal, family or household purposes and not for business purposes.

66.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling it to make loans to Illinois residents at more than 9% interest.

67.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

-11-

68.     Defendants sought out Illinois residents for such loans.

69.     Plaintiff has made payments on the loan.

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

70.     Plaintiff incorporates paragraphs 1-69.

71.     There is a controversy between Plaintiff and the class, on the one hand, and

Defendants, on the other, as to whether Plaintiffs must repay the loans made to them.

72.     Declaratory relief will resolve such controversy.

73.     An injunction is necessary to prevent Defendants from taking any action to collect

the void debts.

## CLASS ALLEGATIONS

74.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and

(b)(2).

75.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan

was made in the name of Midaaswi at more than 9% interest (c) which loan is still outstanding.

76.     Plaintiff may alter the class definition to conform to developments in the case and

discovery.

77.     The class is so numerous that joinder of all members is not practicable.   On

information and belief, there are at least 40 class members.

78.     There are questions of law and fact common to the class members, which

common questions predominate over any questions relating to individual class members.  The

predominant common questions are whether Defendants engage in a practice of making and

attempting to collect illegal loans.

79.     Plaintiff will fairly and adequately represent the class members.  Plaintiff

has retained counsel experienced in class actions and consumer credit litigation.

80.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

81.     Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

82.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.      Injunctive relief;

ii.     Declaratory relief;

iii.    Restitution of all amounts collected on the loans from members of the class;

iv.     Costs of suit; and

v.      Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

83.     Plaintiff incorporates paragraphs 1-69.

84.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

85.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## **CLASS ALLEGATIONS**

86.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

87.     The class consists of (a) all individuals with Illinois addresses (b) to  whom a loan was made in the name of Midaaswi at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

88.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

89.     The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

90.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

91.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

92.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

93.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.    Damages as provided in 815 ILCS 205/6.

ii.   Attorney's fees, litigation expenses and costs of suit; and

iii.  Such other and further relief as the Court deems proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

94.    Plaintiff incorporates paragraphs 1-69.

95.    Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

96.    Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act.

## CLASS ALLEGATIONS

97.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

98.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Midaaswi at more than 9% interest (c) which loan was made on or after a date 3 years prior to the filing of suit.

99.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

100.    The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

101.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

102.　　Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

103.　　Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

104.　　A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.　　Individual actions are not economically feasible.

    b.　　Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.　　Compensatory damages;

    ii.　　Punitive damages;

    iii.　　Attorney's fees, litigation expenses and costs of suit; and

    iv.　　Such other and further relief as the Court deems proper.

## COUNT IV – RICO

105.　　Plaintiff incorporates paragraphs 1-69.

106.　　This claim is against Jessi Lee Phillips Lorenzo and LDF Holdings, LLC.

107.　　All loans made in the name of Midaaswi, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate (704.63%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

108.　　The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

109.　　Midaasawi, LLC is an enterprise affecting interstate commerce, in that it is located

outside of Illinois and makes loans to Illinois residents via the Internet.

110.     Defendants Jessi Lee Phillips Lorenzo and LDF Holdings, LLC are associated with Midaaswi, LLC, as set forth above, in that they direct and control its lending activities.

111.     Defendants LDF Holdings, LLC and Jessi Lee Phillips Lorenzo conducted or participated in the conduct of the affairs of Midaaswi, LLC  through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

112.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

113.     Plaintiff brings this claim on behalf of a class.

114.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Midaaswi at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

115.     The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

116.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.      Whether Midaaswi is an "enterprise."

    c.      Whether Defendants are associated with Midaaswi.

    d.      Whether Defendants conducted or participated in the affairs of Midaaswi through a pattern of making and collecting unlawful loans.

117.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained

-17-

counsel experienced in class actions and consumer credit litigation.

118.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

119.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.        Individual actions are not economically feasible.

    b.        Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.        Treble damages;

    ii.       Attorney's fees, litigation expenses and costs of suit; and

    iii.      Such other or further relief as the Court deems proper.

## COUNT V – RICO

120.     Plaintiff incorporates paragraphs 1-69.

121.     This claim is against Jessi Lee Phillips Lorenzo.

122.     All loans made in the name of Midaaswi, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate (704.63%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

123.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

124.     Midaasawi, LLC and LDF Holdings, LLC constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

125.     The association in fact enterprise affects interstate commerce, in that it has physical

-18-

locations outside of Illinois and makes loans to Illinois residents via the Internet.

126.     Defendant Jessi Lee Phillips Lorenzo is associated with the enterprise, in that she directs and controls its lending activities.

127.     Defendant Jessi Lee Phillips Lorenzo conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

128.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

129.     Plaintiff brings this claim on behalf of a class.

130.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Midaaswi at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

131.     The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

132.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

b.     Whether LDF Holdings and Midaaswi constitute an association in fact "enterprise."

c.     Whether Defendant is associated with the enterprise.

d.     Whether Defendant conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

133.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

134.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

135.    A class action is superior for the fair and efficient adjudication of this matter, in that:

  a.    Individual actions are not economically feasible.

  b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

  i.    Treble damages;

  ii.    Attorney's fees, litigation expenses and costs of suit; and

  iii.    Such other or further relief as the Court deems proper.

## COUNT VI – RICO

136.    Plaintiff incorporates paragraphs 1-69.

137.    This claim is against Jessi Lee Phillips Lorenzo.

138.    All loans made in the name of Midaaswi, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate (704.63%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

139.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

140.    LDF Holdings, LLC is an "enterprise."

141.     Defendant Jessi Lee Phillips Lorenzo is associated with LDF Holdings, LLC, as set

forth above, in that she is its principal executive officer and directs and controls its lending activities, including the making of loans in the name of Midaaswi, LLC.

142.    LDF Holdings, LLC, is engaged in interstate commerce, in that it is located outside of Illinois and is involving in the making and collection of loans to Illinois residents via the Internet.

143.    Defendant Jessi Lee Phillips Lorenzo conducted or participated in the conduct of the affairs of LDF Holdings, LLC through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

144.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

145.    Plaintiff brings this claim on behalf of a class.

146.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Midaaswi, LLC at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

147.    The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

148.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.      Whether LDF Holdings is an "enterprise."

    c.      Whether Defendant Lorenzo is associated with LDF Holdings.

    d.      Whether LDF Holdings is responsible for the making of loans in the name of Midaaswi.

e.    Whether Defendant conducted or participated in the affairs of LDF

Holdings, LLC  through a pattern of making and collecting unlawful loans.

149.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained

counsel experienced in class actions and consumer credit litigation.

150.    Plaintiff's claim is typical of the claims of the class members.  All are based on the

same factual and legal theories.

151.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Individual actions are not economically feasible.

b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendant for:

i.    Treble damages;

ii.    Attorney's fees, litigation expenses and costs of suit; and

iii.    Such other or further relief as the Court deems proper.

## COUNT VII – RICO

152.    Plaintiff incorporates paragraphs 1-69.

153.    This claim is against Jessi Lee Phillips Lorenzo and LDF Holdings, LLC.

154.    All loans made in the name of Midaaswi, LLC to Illinois residents are (a)

unenforceable under Illinois law in whole or in part as to principal or interest because of the laws

relating to usury, and (b) were incurred in connection with the business of lending money at a rate

usurious under Illinois law, where (c) the usurious rate (704.63%, in the case of Plaintiff, and similar

rates, in the case of the class members) is at least twice the enforceable rate (9%).

155.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

-22-

156.     Midaaswi, LLC is an "enterprise."

157.      Defendants Jessi Lee Phillips Lorenzo and LDF Holdings, LLC are associated with Midaaswi, LLC, as set forth above, in that they direct and control its lending activities.

158.     Midaaswi, LLC is engaged in interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

159.     Defendants LDF Holdings, LLC and Jessi Lee Phillips Lorenzo agreed and conspired to originate unlawful debts in the name of Midaaswi and collect them, in violation of 18 U.S.C. §1962(d).

160.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

161.     Plaintiff brings this claim on behalf of a class.

162.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Midaaswi, LLC at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

163.     The class is so numerous that joinder of all members is not practicable.   On information and belief, there are at least 40 class members.

164.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

      a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.     Whether Midaaswi is an "enterprise."

      c.     Whether Defendants agreed to make and collect unlawful loans, as set forth above.

-23-

165. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

166. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

167. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
David Kim (ARDC 6303707)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

-24-

## **JURY DEMAND**

Plaintiff demands trial by jury.

_/s/ Daniel A. Edelman_
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
David Kim (ARDC 6303707)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\38011\Pleading\Complaint DAE 7-9-21_Pleading.WPD

## <u>LIST OF EXHIBITS</u>

A       Ms. Combs' loan agreement

B       LDF Holdings entry on Wisconsin Department of Financial Institutions website

C       Material from LDF Holdings website

D       Image of 597 Peace Pipe Road, Lac du Flambeau, WI 54538

E       LinkedIn profile of Jessi Lee Phillips Lorenzo

F       nationalsmallloan.com, archived website

G       Domain registration records for nationalsmallloan.com

H       records showing 4911 SW 91st Terrace, Suite A, Gainesville, FL 32608 was used for Strategic Funding Partners, Inc., d/b/a  "Gainesville Title Loan"

I       National Small Loan, archived web pages from January 2015

J       archived material from website of Nationalpayday.com

K       article published in the LDF Tribe's newsletter, *Inwewin*, in July 2013

L       material from website of non-tribal National  PayDay